IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| ORION REFINING CORP., | ) | Case No. 03-11483 (MFW) |
| | ) | |
|       Debtor. | ) | |
| _____ | ) | |
| | ) | |
| FLUOR ENTERPRISES, INC., | ) | |
| | ) | |
|       Plaintiff, | ) | Adv. Proc. No. 04-52447 |
| | ) | |
|       v. | ) | |
| | ) | |
| ORION REFINING CORP., CYPRESS | ) | |
| ASSOCIATES, LLC as ORC | ) | |
| DISTRIBUTION TRUST | ) | |
| REPRESENTATIVES | ) | |
| | ) | |
|       Defendant. | ) | |
| | ) | |
| ORION REFINING CORPORATION | ) | |
| | ) | |
|       Counter-Claimant, | ) | |
| | ) | |
|       v. | ) | |
| | ) | |
| FLUOR ENTERPRISES, INC., | ) | |
| | ) | |
|       Counter-Defendant | ) | |
| _____ | ) | |

**OPINION[1]**

     Before the Court are cross-motions for partial summary

judgment filed by Fluor Enterprises, Inc. ("Fluor") and Orion

Refining Corporation (the "Debtor"). In their respective

motions, Fluor contends that it has a secured or constructive

---

[1] This Opinion Constitutes the findings of fact and
conclusions of law of the Court pursuant to Federal Rule of
Bankruptcy Procedure 7052, which is made applicable to contested
matters by Federal Rule of Bankruptcy Procedure 9014.

trust claim in excess of $26 million, and the Debtor asserts that Fluor is merely a general unsecured creditor.  For the reasons stated herein, the Court will deny Fluor's motion and grant the Debtor's motion.

I.   BACKGROUND

The Debtor operated an oil refinery in Norco, Louisiana (the "Refinery").  On May 20, 2002, it executed a Master Service Agreement (the "MSA") with PSC Industrial Outsourcing, Inc., which was subsequently assigned to Fluor on March 3, 2003.  The MSA called for Fluor to preform various services, including: management services, mechanical services, industrial services, and oil spill/hazardous material emergency response services at the Refinery.

On January 29, 2003, the Refinery was damaged by fire.[2] Thereafter, the Debtor issued hundreds of Work Assignment Orders ("WAOs") to Fluor under the MSA to repair and rebuild the Refinery.  On May 12, 2003, Fluor filed a Statement of Claim and Privilege with the Recorder of Mortgages for St. Charles Parish, Louisiana, under the Louisiana Private Works Act.[3]

---

[2]  On August 17, 2005, the Debtor filed an action against Fluor in the 29th Judicial District Court for the Parish of St. Charles, Louisiana, alleging that the Refinery fire was caused by the negligence and other wrongful acts of Fluor.

[3]  The Statement of Claim and Privilege, as supplemented, asserts that the Debtor owes Fluor $26,594,595 for its services.

One day later, on May 13, 2003, the Debtor filed bankruptcy. On May 14, 2003, the Debtor agreed to sell the Refinery to Valero Energy Corporation and Valero Refining – New Orleans, LLC (collectively "Valero").  The Debtor filed a Motion for approval of that sale, to which Fluor objected.  The sale was approved by the Court on June 26, 2003.  The Sale Order provided that the Refinery was sold free and clear of liens but that any liens held by Fluor would attach to the proceeds "in the order of their priority, and with the same validity, priority, force and effect which they now have as against the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtor and all parties in interest."  (Sale Order at ¶ 54.)  In addition, $26,594,595.45 in sale proceeds were escrowed pending a determination of Fluor's lien rights in the Refinery.  (Id.)

On February 4, 2004, Fluor commenced an adversary proceeding to recover the sale proceeds.  The Debtor filed a motion for partial summary judgment on April 13, 2004.  Fluor filed its motion for partial summary judgment on May 14, 2004.  Oral argument was held on September 14, 2004, before the Honorable Charles G. Case, II.[4]  The motions are fully briefed and ripe for

---

[4]  Judge Case began sitting as a visiting judge in this District on March 31, 2004, at which time this case was assigned to him.  The case was reassigned to another visiting judge, the Honorable Randolph Baxter, on April 22, 2005, although this matter was retained by Judge Case.  The case and this matter were reassigned to the Honorable Mary F. Walrath on June 15, 2005.

decision.

## II.  JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B), (K), (N), & (O).

## III. DISCUSSION

Fluor contends that it has a privilege[5] under the Louisiana Private Works Act in approximately $26 million of sale proceeds placed in escrow.  Alternatively, Fluor contends that it is entitled to the sale proceeds, and any insurance proceeds resulting from the fire, under a constructive trust theory.

The Debtor does not contest that Fluor has a valid pre-petition general unsecured claim for work performed, the amount of which is subject to a final accounting.  The Debtor, however, argues that Fluor waived its right to file a privilege against the Debtor's Refinery, that it failed to properly perfect its privilege, and that a constructive trust is not authorized under applicable law.  Even if Fluor has a perfected privilege or constructive trust claim, the Debtor contends that its claim is subordinate to other secured debt on the property and, as a result, Fluor's claim is wholly unsecured.

---

[5]  A privilege is akin to a mechanics' lien claim.

-4-

A.    Standard of Review

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 161 (1970).  Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts").  The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In ruling on a motion for summary judgment, "the evidence of

-5-

the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.  A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution.  Finley v. Giacobbe, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

B.    Motion to Strike Affidavits

As a preliminary matter, Fluor filed a motion to strike affidavits submitted in support of the Debtor's motion for summary judgment.  Fluor contends that those affidavits (of Richard S. Rayzor and Eric E. Bluth) are inadmissible because the affiants did not state that their averments were based on personal knowledge.  Any defect has been cured by the filing of supplemental affidavits which confirm that the affiants do have personal knowledge of the averments contained therein. Consequently, the Court will deny Fluor's motion to strike.

C.    Contractual Waiver

The Debtor argues that, even if Fluor has a claim of privilege under the Louisiana Private Works Act, Fluor waived that claim pursuant to section 5.6 of the MSA.  The parties disagree over the interpretation of that section.

"Interpretation of a contract is the determination of the

-6-

common intent of the parties." La. Civ. Code art. 2045. When words of a contract are clear, explicit, and do not lead to absurd consequences, an examination of the parties' intent is prohibited. La. Civ. Code art. 2046; Kenny v. Oak Builders, Inc., 235 So. 2d 386, 390 (La. 1970) ("Where a clause of a contract is clear and unambiguous, 'the letter of it should not be disregarded, under the pretext of pursuing the spirit'.") (citation omitted).

Therefore, the Court looks first to the language of the contract. Section 5.6 of the MSA provides:

> Payments to Personnel and Subcontractors. In connection with the performance of all Services, [Fluor] waives and releases all lien rights and shall pay all legal claims of its Personnel and subcontractors and will not permit any liens of any kind to be affixed against the property of [Debtor] or any third party as a result of claims by any person or entity who furnishes labor, services or materials to [Fluor]. With each invoice to [Debtor] during a Work Assignment, [Fluor] shall furnish [Debtor] with a lien waiver acceptable to [Debtor] as evidence of payment of all such claims or obligations that might give rise to a lien upon the [Debtor]'s property.

The Debtor asserts that the language: "[Fluor] waives and releases all lien rights" is unambiguous and that, consequently, Fluor is contractually prohibited from filing a privilege against the Refinery.

Fluor contends that the clause was meant to waive any privileges that might be asserted by Fluor's personnel or subcontractors, not to waive any privilege that Fluor might

assert.  It argues that this is evident from the paragraph's title, "Payment to Personnel and Subcontractors."  Fluor further argues that the phrase "of its Personnel and subcontractors" applies both to Fluor's obligation to "pay all legal claims" and to its obligation to "waive and release all lien rights."

The Court disagrees with Fluor's interpretation.  If the clause "of its Personnel and subcontractors" was meant to apply to both obligations, the sentence would have required additional commas: "In connection with the performance of all Services, [Fluor] waives and releases all lien rights[,] and shall pay all legal claims[,] of its Personnel and subcontractors. . . ."  Without the use of commas indicating that the phrase "and shall pay all legal claims" is an independent clause, Flour's waiver of lien rights cannot be read to be the waiver of rights of Fluor's personnel and subcontractors rather than Fluor itself.

Further, the waiver and release of lien rights contained in Section 5.6 cannot logically be read to waive the lien rights of subcontractors and personnel because Fluor did not have authority to waive any other party's rights.  It can only mean that Fluor was waiving any lien rights it might assert.

Fluor argues, however, that the intention of the section is evident from the last sentence, which states that Fluor will provide evidence of waiver of liens from its personnel and subcontractors when it submits invoices to the Debtor.  The Court

-8-

similarly rejects this argument because it would make the first
sentence redundant or unnecessary.  If Fluor were already waiving
the liens of the personnel and subcontractors in the first
sentence, why would it have to provide evidence of waiver by them
when it submitted its invoices?  Contracts should not be
interpreted to make any provision redundant or nonsensical.  See,
e.g., Loubat v. Audubon Life Ins. Co., 170 So. 2d 745, 749 (La.
Ct. App. 1964) (stating that a "contract should not be given a .
. . construction which would lead to an absurd conclusion, or
render the [contract] nonsensical and ineffective."), aff'd, 177
So. 2d 281 (La. 1965).

Finally, Fluor argues that its obligation to waive the liens
is conditioned upon the Debtor actually paying Fluor.  It finds
this from the beginning of Section 5.6 which states that, "in
connection with the performance of all Services," the liens are
waived.  Fluor argues that this includes the Debtor's obligation
to pay Fluor.  The Debtor disagrees and notes that the term
"Services" is defined in the MSA to include only the services
which Fluor is to perform, not the Debtor's obligation to pay for
those services.  (See MSA at § 1.15.)

The Court agrees with the Debtor that the definition of
"Services" and its inclusion in the first clause of the section
does not support Fluor's argument.  Further, Fluor's
interpretation is not persuasive.  If, as Fluor asserts, its

-9-

waiver of a lien is conditioned on the Debtor paying it, the waiver has no purpose.  If Fluor were paid, it would have no claim for which a lien could be filed and, therefore, a lien waiver would be unnecessary.  Contracts will not be interpreted to make any provision redundant or of no effect.  See, e.g., Loubat, 170 So. 2d at 749.

Instead, the provision logically means that Fluor is waiving its own lien rights and that Fluor will pay its subcontractors and personnel, thereby assuring that they will not file a lien against the Debtor.  La. Civ. Code art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.").

Consequently, the Court concludes that section 5.6 of the MSA is unambiguous and that Fluor waived any right it might have to assert a lien or privilege for services rendered by it under the MSA.

Fluor argues nonetheless that section 5.6 is not enforceable because of the Debtor's fraudulent activity.  Fluor alleges that the Debtor mislead Fluor into performing on the Refinery rebuild when the Debtor never intended to pay Fluor and knew that the insurance proceeds were insufficient to do so.  See, e.g., Placid Oil Co. v. Taylor, 345 So. 2d 254, 259 (La. Ct. App. 1977) (holding that when consent to contract is vitiated by fraud,

-10-

contract is null and void).

The alleged fraud, however, occurred long after the MSA was executed.  Therefore, it does not constitute fraud in the inducement and does not vitiate the MSA or the waiver contained therein.  See, e.g., Shelton v. Standard/700 Assocs., 798 So. 2d 60, 64 (La. 2001) (holding that, to vitiate a contract due to fraud, the fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract).

Fluor contends, though, that there was not one contract between the parties but that each WAO constituted a separate contract, albeit governed by the terms of the MSA.  Fluor argues that the Debtor's alleged fraud at the inception of the WAOs for the rebuild constitutes fraud in the inducement, nullifying the effect of the waiver as to them.  The Court finds no support for this argument, in the facts or the law.

D.   Constructive Trust

Fluor argues, alternatively, that it is entitled to a constructive trust on the $26 million in sale proceeds (and/or any insurance proceeds) based on the Debtor's alleged fraudulent conduct in inducing Fluor to provide services by promising payment when the Debtor knew that there was no money available to pay Fluor.

The Debtor denies the allegation that it acted

fraudulently.[6]  Further, the Debtor asserts that Louisiana law applies and does not recognize constructive trusts.

Fluor denies that Louisiana law is applicable.  Instead, it asserts that it has a constructive lien under federal common law or under Texas law.

### 1.   Applicable Law

Constructive trusts in bankruptcy are recognized in section 541(d) of the Bankruptcy Code, which provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

### a.   Federal Common Law

Fluor argues initially that federal common law supports imposition of a constructive trust in the sale and insurance proceeds.  See, e.g., EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.), 243 B.R. 231, 236 (Bankr. D. Del. 2000), citing In re Columbia Gas Sys., Inc., 997 F.2d 1039,

---

[6]  The Debtor vehemently denies Fluor's allegations of fraud and notes that the affidavits submitted by Fluor in support of its assertions are deficient.  Because Fluor has the burden of proving fraud by clear and convincing evidence, the Debtor contends that the Court must deny Fluor's motion for summary judgment on this ground.  See, e.g., Marcello v. Bussiere, 284 So. 2d 892, 894 (La. 1973).  The Court finds it unnecessary to decide this factual issue, however, because it concludes that no constructive trust is available to Fluor at any rate.

1056 (3d Cir. 1993).

The Third Circuit in Columbia Gas relied on the Supreme

Court's decision in United States v. Kimbell Foods, Inc., 440

U.S. 715 (1979), to conclude that federal common law is

applicable to a determination of whether a constructive trust may

be imposed to exclude property from the estate.  997 F.2d at

1055.  The Third Circuit acknowledged, however, that

"[d]eveloping a federal common law rule is the exception rather

than the rule.  Federal law should coincide with the relevant

state law unless state law would undermine the objectives of the

federal statutory scheme and there is a distinct need for

nationwide legal standards."  Id.

As discussed by the Third Circuit, the Supreme Court

outlined the analysis that determines whether uniform federal

common law or state law should apply:

> The determination depends on the nature and importance
> of the government interest at issue and the effect of
> applying state law.  To decide whether a national
> federal rule is necessary, courts should consider: (1)
> the need for a nationally uniform law; (2) whether
> incorporation of state law would frustrate specific
> objectives of the federal program at issue; and (3) the
> extent to which application of a federal common law
> rule would upset commercial expectations that state law
> would govern.

Id., citing Kimbell Foods, 440 U.S. at 727-28.

Fluor argues that federal law is implicated because the

Bankruptcy Code was clearly intended to provide a nationally

uniform law.  The Court disagrees.  Fluor's entitlement to a

-13-

constructive trust is predicated on state law claims of fraud, misrepresentation, and promissory estoppel; it is not founded on any specific provision of the Bankruptcy Code.  Thus, no nationally uniform law is at stake and no federal program is at issue.

Fluor argues, however, that the application of state law will frustrate federal policy.  It argues that, when obtaining financing and seeking approval of payments to critical vendors involved in the rebuild of the Refinery, the Debtor represented that the insurance proceeds would be used to pay vendors involved in the rebuild.  This, Fluor asserts, was false.  Unless the Court imposes a constructive trust on the insurance proceeds, Fluor contends that the federal policy of assuring proper administration of bankruptcy cases will be frustrated.

The Court disagrees.  The critical vendor motion did not require the payment of vendors, it merely permitted the Debtor to do so if it determined that was necessary to obtain their continued services post-petition.  The financing motion similarly did not have any requirement that the vendors be paid; in fact, the lender was given priority over all creditors, including Fluor and the vendors.  Thus, there is no compelling reason to look to federal common law for imposition of a constructive trust.

Furthermore, the parties agreed that Louisiana law would govern their transaction.  (See MSA at § 25.)  Therefore,

-14-

application of state law will not upset any commercial expectation of the parties.  Accordingly, the Court concludes that federal common law is not applicable to require the imposition of a constructive trust in this case.

> b.   <u>State Law</u>

Fluor argues, alternatively, that Texas law applies to determine if it has a constructive trust.  The Debtor argues that Louisiana law applies.  Both agree, however, that the Restatement (Second) of Conflict of Laws (the "Restatement") provides the standard for determining which law applies.  (Plaintiff's Amended Answering Brief at p. 28; Defendant's Reply Brief at p. 16.)

Section 148 of the Restatement governs the choice of law for torts alleging fraud and misrepresentation:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>> (b) the place where the plaintiff received the representations,
>> (c) the place where the defendant made the representations,
>> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>> (f) the place where the plaintiff is to render

> performance under a contract which he has been
> induced to enter by the false representations of
> the defendant.

Restatement (Second) of Conflict of Laws § 148(2) (1971).

Fluor argues that the actions it took in reliance on the Debtor's misrepresentations took place in Texas, where the person responsible for deciding whether to perform under each WAO was located.  The Court disagrees.  Fluor's actions in reliance on the Debtor's alleged misrepresentations occurred primarily in Louisiana, where it continued to preform work on the Refinery rebuild.  Fluor admits that it received the alleged misrepresentations in both Louisiana and Texas, but places special emphasis on the fact that the ultimate decision-maker was located in Texas.  Many of the alleged misrepresentations occurred in Louisiana and the work done in reliance on them was all performed there.

Fluor is a California business with its principal place of business in California, but has offices in Louisiana and Texas; the Debtor was a Delaware corporation with a place of business in Louisiana.  It is admitted that the Debtor was located at all relevant times in Louisiana.  Further, the object of the Debtor's alleged misrepresentation (the Refinery) was situated in Louisiana.  Finally, as found above, Fluor was to perform the allegedly fraudulent contract in Louisiana.

Based on these uncontested facts, the Court concludes that Louisiana law applies to Fluor's claim of a constructive trust in the sale proceeds of the Refinery, and on any available insurance proceeds, based on the Debtor's alleged fraud.

Further, because the Refinery is real property, Louisiana law controls the nature of Fluor's interest in that property and the proceeds of that property.  La. Civ. Code art. 3535 ("Real rights in immovables situated in this state are governed by the law of this state. . . .  Real rights in corporeal movables are governed by the law of the state in which the movable was situated at the time the right was acquired.").

### c.   Application of Louisiana Law

Fluor is not arguing that the Debtor lacks an equitable interest in the Refinery or that the Refinery is not property of the estate.  Rather, Fluor seeks to impose a constructive trust on the proceeds from the sale of the Refinery as a remedy for the Debtor's allegedly fraudulent actions.

Pursuant to the Sale Order, the Refinery was sold to Valero free and clear of any and all liens asserted by Fluor, with any such liens to attach to the proceeds to the same extent that the liens had attached to the Refinery.  (Sale Order at ¶ 54.) Accordingly, to be entitled to the escrowed sale proceeds, Fluor must prove its entitlement to a constructive trust as it relates to the Refinery.

-17-

Louisiana law does not recognize rights in real property based on a constructive trust theory.  See, e.g., Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt.), 4 F.3d 1329, 1336 (5th Cir. 1993) ("Louisiana does not recognize constructive trusts."); Plaquemines Parish Comm'n Council v. Delta Dev. Co., 486 So. 2d 129, 135 (La. Ct. App. 1986) ("While the constructive trust theory has appeal as a means to chastise an unfaithful fiduciary, it is an anathema to civilian notions of ownership, a precept unsupported by the Civil Code."), rev'd on other grounds, 502. So. 2d 1034 (La. 1987); Schwegmann v. Schwegmann, 441 So. 2d 316, 322-323 (La. Ct. App. 1984) (stating in dicta that "the Louisiana Civil Code prohibits the imposition of a constructive trust on property"); Laurie Dearman Clark, Comment, Louisiana's New Law on Capacity to Make and Receive Donations: "Unduly Influenced" by the Common Law, 67 Tul. L. Rev. 183, 220 (1992) ("Louisiana currently has no device like the common-law constructive trust.").[7]  See also In re Interstate Trust &

---

[7] Some authority exists in Louisiana stating that a constructive trust may be warranted.  See Boyd v. Martin Exploration Co., 56 B.R. 776, 781 (E.D. La. 1986), citing Decatur-St. Louis Combined Equity Props., Inc. Venture v. Abercrombie, 411 So. 2d 677 (La. Ct. App. 1982) (using the constructive trust remedy in the context of partnership property).  The Louisiana Court of Appeals, however, later limited the holding in Decatur to partnership interests. Plaquemines Parish, 486 So. 2d at 136.  As a result, "[t]here is no longer support for the general theory of 'constructive trusts' in Louisiana."  Wilson v. Bigger (In re Latham Exploration Co.), 83 B.R. 423, 427 (W.D. La. 1988).

-18-

Banking Co., 176 So. 1, 9 (La. 1937) ("[E]quitable liens do not exist under the laws of this state.").

Consequently, the Court concludes that Fluor is not entitled to a constructive trust on the sale or insurance proceeds.

E.    Remaining Claims

Because the Court concludes that Fluor has no privilege or constructive trust in the sale or insurance proceeds, the Court need not address the Debtor's other arguments.[8]


IV.  CONCLUSION

For the foregoing reasons, the Court will deny Fluor's motion for partial summary judgment and grant the Debtor's motion for partial summary judgment.

An appropriate order is attached.


BY THE COURT:


Dated: May 9, 2006

Mary F. Walrath
United States Bankruptcy Judge

---

[8]  The Debtor argued that even if Fluor had a privilege or constructive trust claim it had no priority over the other secured claims in the Debtor's assets which allegedly exceed $1.1 billion - far more than the value of the Debtor's assets.  The Debtor also argued that any privilege or constructive trust claim Fluor might have was avoidable under section 544.