**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| ORION REFINING CORPORATION, | ) Case No. 03-11483(MFW) |
| | ) |
|        Debtor. | ) Related Documents: 1283 and |
| _____ | )               1788 |
| FLUOR ENTERPRISES, INC., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|   v. | ) Adversary No. 04-52447(MFW) |
| | ) |
| ORION REFINING CORPORATION, | ) |
| CYPRESS ASSOCIATES, LLC as | ) |
| ORC DISTRIBUTION TRUST | ) |
| REPRESENTATIVE, | ) |
| | ) |
|      Defendant. | ) |
| | ) |
| ORION REFINING CORPORATION, | ) |
| | ) |
|     Counter-Claimant, | ) |
| | ) |
|   v. | ) |
| | ) |
| FLUOR ENTERPRISES, INC., | ) |
| | ) |
|     Counter-Defendant. | ) |

**<u>OPINION</u>**[1]

Before the Court are the Complaint and Motion of Fluor

Enterprises, Inc. ("Fluor") seeking payment of its pre-petition

claims totaling $20,657,860.58 on theories of breach of contract,

promissory estoppel, misrepresentation, and under the Critical

---

[1] This Opinion, and the accompanying Findings of Fact
("FOF"), constitute the findings of fact and conclusions of law
of the Court pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure.

Fire Vendor Order entered by the Court early in this chapter 11
case.  The ORC Distribution Trust (the "Trust") opposes the
relief sought.  For the reasons set forth below, the Court will
grant the relief requested by Fluor and direct the payment of its
claims in full.

I.   BACKGROUND

     The background of this case is reflected in the Court's
Opinion dated May 9, 2006, and in the Court's Findings of Fact
("FOF") which are attached hereto and incorporated herein by
reference.  A summary of the relevant facts is presented here.

     Orion Refining Corporation ("Orion") operated an oil
refinery in Norco, Louisiana (the "Refinery").  On May 20, 2002,
it executed a Master Service Agreement (the "MSA") with PSC
Industrial Outsourcing, Inc. ("PSC"), which was subsequently
assigned to Fluor on March 3, 2003.  The MSA called for PSC (and
Fluor) to perform various services, including management,
mechanical, industrial, and oil spill/hazardous material
emergency response services at the Refinery.

     On January 29, 2003, the Refinery (and principally its coker
unit) was damaged by fire.  As a result, Orion determined to
expand PSC's duties under the MSA to make it the general
contractor for the repair of the coker unit.  Orion thereafter
issued hundreds of Work Assignments to PSC, and later to Fluor,

2

under the MSA for the repair of the coker unit.

Orion filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 13, 2003 (the "Petition Date"). Orion also filed a Motion for Authority to Pay Certain Fixed, Liquidated and Undisputed Prepetition Claims of Fire Vendors, Mechanics and Materialmen (the "Critical Fire Vendor Motion") and a separate Motion for Authority to Pay Prepetition Obligations of Certain Critical Vendors and Service Providers Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code (the "Critical Vendor Motion"). (FOF 71)

As the general contractor on the coker rebuild, Fluor was the largest and most important of the Critical Fire Vendors. (FOF 31, 33-34, 53-54, 57, 63-64, 83, 85, 95, 97-98, 105, 111, 136, 144-46) On numerous occasions (both before and after the bankruptcy case was filed), Orion emphasized to Fluor the importance of Fluor staying on the job and finishing the coker rebuild in a timely fashion. (FOF 53-54, 63-64, 93, 95, 97-98, 103-107, 111) Orion's representatives told Fluor that if it finished the coker rebuild, its pre-petition claims would be treated as Critical Fire Vendor claims and paid in full. (FOF 53-54, 63-64, 93, 95, 97-98, 103-107, 111) Fluor continued on the job and the coker rebuild was finished ahead of schedule on June 5, 2003, approximately three weeks after the Petition Date. (FOF 112-13)

3

Shortly after it had filed for bankruptcy, Orion filed a Motion for approval of a sale of the Refinery to Valero Energy Corporation and Valero Refining – New Orleans, LLC (collectively "Valero").  The purchase agreement contemplated that the Refinery would be repaired before closing on the sale; if not, funds would be escrowed until completion.  The Court granted the sale motion on June 26, 2003.

After the sale closed in early July 2003, Orion refused to pay Fluor's pre-petition claims, asserting that it had claims against Fluor as well.  (FOF 125)  On August 17, 2005, Orion filed an action against Fluor in Louisiana, alleging that the Refinery fire was caused by the negligence and other wrongful acts of Fluor.  (FOF 126)

On February 4, 2004, Fluor filed a Complaint against Orion to recover its pre-petition claims for fire restoration, maintenance, and the work done on the coker rebuild.  (FOF 4)  The Complaint contained four counts.  Count I asserted a mechanics' lien against the Refinery under the Louisiana Private Works Act and, thus, the right to sale proceeds placed in escrow.  (Id.)  Count II alleged fraud and misrepresentation.  (Id.)  Count III asserted promissory estoppel.  (Id.)  Count IV asserted a constructive trust against the sale proceeds.  (Id.)  On June 3, 2004, Fluor filed a Motion for Relief from Previously Entered Critical Fire and Trade Vendor Orders ("Motion for Relief"),

4

which also sought payment of the pre-petition claims.  (FOF 7)
The Trust[2] opposed both the Motion and the Complaint.  (FOF 5,8)

In an Opinion dated May 9, 2006, the Court denied Fluor's
motion for partial summary judgment and granted the Trust's
motion for partial summary judgment on Counts I and IV of the
Fluor Complaint.  (FOF 10)  The Court held that Fluor could not
recover under Count I because under the MSA it had waived its
right to impose a mechanics' lien.  Fluor Enterprises, Inc. v.
Orion Refining Corp. (In re Orion Refining Corp.), 341 B.R. 476,
481 (Bankr. D. Del. 2006).  The Court further concluded that
Count IV failed because Louisiana law (the law applicable to the
issue) did not recognize the remedy of constructive trust.  Id.
at 482-85.[3]

In an Order dated July 27, 2006, the Court determined that
Fluor could continue to prosecute its action asserting that Orion
was obligated to pay Fluor's pre-petition claims in full based on
its contention that (1) there was an agreement between Fluor and
Orion that Fluor was a Critical Fire Vendor and that its pre-

---

[2]  On May 12, 2004, Orion was succeeded by the Trust under
the Amended Plan of Liquidation.  The Trust also filed a
counterclaim in the Complaint, asserting entitlement to recover
alleged preferences in the amount of $1,951,888.47.  The Trust
has withdrawn that counterclaim.

[3]  Fluor appealed the Court's May 10 Opinion and Order.  On
August 11, 2006, the District Court dismissed the appeal, without
prejudice, because the May 10 Opinion and Order disposed of fewer
than all the claims in the adversary proceeding.

petition claims would be paid in full if it completed the coker rebuild or (2) Orion misrepresented that Fluor would be paid in full when the coker rebuild was done and Fluor detrimentally relied on those misrepresentations by completing that work.  The Court ordered a consolidated trial of Fluor's Complaint and its Motion for Relief on those two theories.

Trial was held on May 7, 8, and 9, 2007.  Post-trial briefs were filed by the parties on June 20 and July 5, 2007.  The matter is ripe for decision.


II.  <u>JURISDICTION</u>

This is a core proceeding, and the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B), & (O).


III. <u>DISCUSSION</u>

A.  <u>Choice of Law</u>

Fluor's claims for breach of contract and misrepresentation arise under state common law.  <u>See, e.g.</u>, <u>United States v. Texas</u>, 507 U.S. 529, 534 (1993) (holding that fraud claims arise under state law); <u>In re III Enterprise, Inc.</u>, 163 B.R. 453, 459 (Bankr. E.D. Pa. 1994) (concluding that issue of whether a valid contract exists is a question of state law).

Both federal common law and Delaware law apply section 188 of the Restatement (Second) Conflict of Laws. See, e.g., In re Miller, 292 B.R. 409, 413 (B.A.P. 9th Cir. 2003); Oliver B. Cannon & Son v. Dorr-Oliver, Inc., 394 A.2d 1160, 1166 (Del. 1978); Viking Pump, Inc. v. Liberty Mut. Ins. Co., No. Civ. A. 1465-VCS, 2007 WL 1207107, at *26 n. 113 (Del. Ch. Apr. 13, 2007). Section 188 of the Restatement weighs various factors in determining which law to apply, including: (1) where the contract was negotiated, (2) the place of performance, (3) the location of the subject matter of the contract, and (4) the place of incorporation and place of business of the contracting parties. See, e.g., Viking Pump, 2007 WL 1207107, at *26 n. 113; Miller, 292 B.R. at 413. In this case, those factors weigh in favor of applying Louisiana law. The statements by representatives of Orion which support Fluor's claims were all made in Louisiana. Fluor's performance occurred in Louisiana. The subject of the alleged agreement was the coker unit, which was located at the Refinery in Louisiana. Orion's business was at all relevant times located in Louisiana.

Consequently, under both federal common law and Delaware's conflict of laws rules, Fluor's claims are governed by Louisiana law. See also Orion Ref. Corp., 341 B.R. at 484-85.

B.    <u>Agreement to Pay Pre-Petition Claims</u>

Fluor asserts that an agreement was reached between it and Orion whereby Orion agreed to pay Fluor's pre-petition claims in full if Fluor completed the coker rebuild without delay.  Fluor presented evidence of numerous conversations and meetings it had with Orion's representatives establishing that agreement.  (FOF 53-54, 63-64, 93, 95, 97-98, 103-07, 111)

Under Louisiana law, there are four elements necessary for a contract: (1) capacity, (2) consent, (3) lawful cause, and (4) an object.  La. Civ. Code Ann. arts. 1918, 1927, 1966, 1971 (1987).  <u>See, e.g.,</u> <u>Prestridge v. Elliot</u>, 847 So. 2d 789, 791-92 (La. Ct. App. 2003).  Fluor bears the burden of establishing all four elements by a preponderance of the evidence.  <u>See, e.g.</u>, <u>Adams v. Commercial Nat. Bank in Shreveport</u>, 661 So. 2d 636, 639 (La. Ct. App. 1995).

1.    <u>Capacity</u>

The oral statements upon which Fluor relies are primarily statements of Eric Bluth, Orion's Chief Operating Officer.  (FOF 53-54, 63-64, 93, 95, 97-98, 103-07, 111)  As COO and the senior client representative for Orion in its relationship with Fluor, Bluth had actual authority to bind Orion.  "All persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting."  La. Civ. Code Ann. art. 1918 (1987).  "The principal may confer on

the mandatary [agent] general authority to do whatever is appropriate under the circumstances." La. Civ. Code Ann. art. 2994 (2005). "The mandatary [agent] may perform all acts that are incidental to or necessary for the performance of the mandate. The authority granted to a mandatary [agent] to perform an act that is an ordinary part of his profession or calling, or an act that follows from the nature of his profession or calling, need not be specified." La. Civ. Code Ann. art. 2995 (2005). "The principal is bound to perform the contract that the mandatary [agent], acting within the limits of his authority, makes with a third person." La. Civ. Code Ann. art. 3020 (2005). See generally Restatement (Third) of Agency § 2.01 (2006) ("An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to act.").

Further, as COO and the main Orion representative dealing with Fluor on the coker rebuild, Bluth had apparent authority to bind Orion on matters relating to that subject. "One who causes a third person to believe that another person is his mandatary [agent] is bound to the third person who in good faith contracts with the putative mandatary [agent]." La. Civ. Code Ann. art. 3021 (2005). See generally Restatement (Third) of Agency § 2.03

9

(2006) ("Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.").

The Trust contends that when Steven L. Victor was hired as Orion's CRO, Victor instructed Orion's senior management that they did not have the authority to make any deals with vendors regarding their pre-petition claims.  The Trust suggests that Victor alone had the authority to negotiate with Critical Fire Vendors.  Therefore, it argues that the statements on which Fluor relies were misunderstood by Fluor or could not reasonably have been relied upon by Fluor.

The Court disagrees.  Although Victor was installed as Orion's CRO in April 2003, that had no effect on the corporate authority of other members of Orion's senior management, including Bluth.  (FOF 46)  Fluor was told that Victor would be dealing with Orion's bankruptcy case, but that did not deprive Orion's other officers of their authority, even in matters involved in the bankruptcy case.  (FOF 46)

Additionally, Bluth's statements to Fluor were ratified by other members of Orion's senior management including Clark Johnson, Orion's Chief Executive Officer, Richard Rayzor, Orion's Chief Financial Officer, and even by Victor himself.  (FOF 93-95,

97-99, 105-10, 146-48)  See generally Restatement (Third) of
Agency § 4.01 (2006) ("Ratification is the affirmance of a prior
act done by another, whereby the act is given effect as if done
by an agent acting with actual authority. . . .  A person
ratifies an act by (a) manifesting assent that the act shall
affect the person's legal relations, or (b) conduct that
justifies a reasonable assumption that the person so consents.").

In calls and meetings with Fluor after Bluth had promised
that Fluor's pre-petition claims would be paid in full, neither
Rayzor nor Victor rescinded Bluth's statements.  (FOF 109, 148)
Specifically, in the May 16 and 20 discussions, neither Victor
nor Rayzor told Fluor that its pre-petition claims would not be
paid in full.  (FOF 97-99, 105-09)  While Victor told Fluor that
it was on the Critical Fire Vendor list for only $3.7 million, he
suggested that Fluor submit its invoices so they could be
reconciled and paid.  (FOF 106-07)  This reiterated and
reinforced the statements made by Bluth: that if Fluor continued
with the coker rebuild, then Fluor would be paid its pre-petition
claims in full, subject only to Fluor submitting and reconciling
its invoices.  (FOF 53-54, 63-64, 93, 95, 97-98, 103-07, 111)

2.   Consent

The element of consent requires an offer and an acceptance.
La. Civ. Code Ann. art. 1927 (1987) ("A contract is formed by the
consent of the parties established through offer and acceptance.

11

Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.  Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made."). See, e.g., Imperial Chemicals Limited v. PKB Scania, 929 So. 2d 84, 90 (La. Ct. App. 2006); Grasso v. First USA Bank, 713 A.2d 304, 308 (Del. Super. Ct. 1998).  See generally Restatement (Second) of Contracts §§ 24 & 32(2) (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it," and "[t]he terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.").

Fluor contends that Orion made an offer to Fluor, in their post-petition calls and meetings, that Orion would pay all amounts accrued pre-petition as calculated under the MSA if Fluor completed the coker rebuild.  (FOF 53-54, 63-64, 93, 95, 97-98, 103-07, 111)  Fluor argues that this offer was sufficiently definite to form the basis of an enforceable agreement upon acceptance by Fluor.

The Trust argues that there was no offer made by Orion and no agreement between the parties. The Trust asserts that any statements made by Orion's representatives were conditional: that the Court had to approve the Critical Fire Vendor Motion, that Fluor had to be on the list in an agreed amount, and that the terms of the post-petition relationship had to be confirmed in a Trade Agreement. The Trust contends that while the parties discussed these issues, no agreement was reached. Where terms are left open or uncertain, there can be no agreement. <u>See, e.g.</u>, <u>Villars v. Edwards</u>, 412 So. 2d 122, 124 (La. Ct. App. 1982) (finding no agreement where contractor claimed price quoted was a "ballpark" estimate). The Trust especially notes that no written Trade Agreement was executed, as contemplated by the Critical Fire Vendor Order and as expected for such a large and complicated claim.

The Court disagrees. Though Orion did state that the payment of Fluor's pre-petition claims was conditional, all the conditions were met. The Court did approve the Critical Fire Vendor Motion, Fluor was included on the Critical Fire Vendor list, and Orion and Fluor did ultimately agree on the correct amount of Fluor's pre-petition claims. (FOF 78-79, 85, 134)

The Court concludes further that there was no necessity for a written agreement. The Critical Fire Vendor Motion and Order both expressly state that the execution of a Trade Agreement was

13

not a prerequisite to payment.  (FOF 74, 78-79, 150)  Through the
MSA, the numerous work orders issued under the MSA, and an
extensive course of dealing, all the material terms of the
agreement between Orion and Fluor, including all terms necessary
to calculate the amount owed for work done pre-petition, had been
established and were in place as of the Petition Date.  (FOF 21)

The Trust argues nonetheless that the statements made by
Bluth were not an offer or agreement to pay Fluor its pre-
petition claims; instead, the Trust contends that Orion only
stated that it "intended" to pay Fluor.

The Court concludes that this is a distinction without
meaning.  Fluor clearly understood Bluth to be making an offer.
Additionally, Orion acted as if it were an offer; Orion coupled
its statements of its "intent" to pay the pre-petition claims
with its request that Fluor continue the coker rebuild without
interruption.  The Court concludes, therefore, that the
statements made by the Orion representatives constituted an offer
to Fluor: if Fluor completed the coker rebuild, its pre-petition
claims would be paid in full.

The Court further finds that Fluor accepted the offer from
Orion by making a conscious decision (at least by May 16, 2003)
to take all steps necessary to complete the repairs.  Thus, the
Court finds that Fluor accepted the offer by its actual
performance in continuing and completing the coker rebuild.  La.

14

Civ. Code Ann. art. 1939 (1987) ("When an offeror invites an offeree to accept by performance and, according to usage or the nature or the terms of the contract, it is contemplated that the performance will be completed if commenced, a contract is formed when the offeree begins the requested performance."). See, e.g., Woods v. Morgan City Lions Club, 588 So. 2d 1196, 1200 (La. Ct. App. 1991) (stating that "[o]nce an offer is made, consent to a contract need not be expressed in words but may be implied by actions of the parties"); Myers v. Myers, 532 So. 2d 490, 496 (La. Ct. App. 1988) (noting that "[c]onsent to an obligation can be shown by performance and/or by silence"). See generally Restatement (Second) of Contracts §62(1)-(2) (1981) ("Where an offer invites an offeree to choose between acceptance by promise and acceptance by performance, the tender or beginning of the invited performance or a tender of a beginning of it is an acceptance by performance."); 1-3 Arthur Linton Corbin, et. al., Corbin on Contracts § 3.8 at n. 18 (2006) ("If one offers a promise to pay for specified construction or for service over a period of time, the beginning of the work so that it is known by the offeror may be a sufficient acceptance to bind both parties by mutual promises.") (citing Fujimoto v. Rio Grande Pickle Co., 414 F.2d 648 (5th Cir. 1969)).

The Trust argues that there is no evidence that Fluor accepted any offer, because on June 6 Fluor was still considering

its other options.  (JTX 76)  Further, it contends that the fact
that Fluor and Orion continued to negotiate afterwards proves
that there was no agreement.

The Court disagrees.  In fact, the internal Fluor meeting on
June 6 was <u>after</u> the coker rebuild was complete and, therefore,
after Fluor had fully performed the post-petition agreement.[4]  By
that time, however, Orion had not performed any part of its
agreement; Fluor had received no payments for its pre-petition
claims.  Therefore, it is understandable that Fluor was
considering its options for how to get its pre-petition claims
paid.  The Court concludes that the June 6 presentation is
evidence that the parties were still trying to reconcile the
amount due, not that there was no agreement that the pre-petition
claims would be paid.

Thus, the Court concludes that Fluor has established that
there was a meeting of the minds to pay Fluor all of its
pre-petition claims under the Critical Fire Vendor Order if Fluor
continued to work and completed the coker rebuild.

3.  <u>Lawful Cause</u>

Another necessary element to a contract under Louisiana law
is "lawful cause."  La. Civ. Code Ann. art. 1966 (1987) ("An

---

[4]  It is important to remember that all the relevant events
occurred within a very short time frame.  The coker rebuild was
completed approximately three weeks after the bankruptcy case was
filed.

16

obligation cannot exist without a lawful cause.").  The performance of, or promise to perform, an existing legal obligation does not constitute lawful cause.  See, e.g., Arkansas Louisiana Co. v. R.O. Roy & Co., 198 So. 768, 772 (La. 1940); Castano v. Bellina, 503 So. 2d 195, 198 (La. Ct. App. 1987); Standard Electric Construction Co. v. Frick Co., 134 So. 322, 322-23 (La. Ct. App. 1931).

The Trust argues that there was no lawful cause for any agreement made by it to pay Fluor, because Fluor's agreement to complete the coker rebuild was merely a promise to perform a legal obligation it already had.  The Trust asserts that the February 4 Work Assignment (whereby Fluor became the general contractor on the rebuild) was an executory contract, which Fluor was obligated to perform.  After Orion commenced its chapter 11 proceeding, but before executory contracts were assumed or rejected under section 365(a) of the Bankruptcy Code, the Trust contends that the Fluor contract remained in existence and enforceable by Orion, but not against it.  See, e.g., U.S. Postal Service v. Dewey Freight Sys., Inc., 31 F.3d 620, 624 (8th Cir. 1994) (citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 532 (1984)); In re University Medical Center, 973 F.2d 1065, 1075 (3d Cir. 1992).

Fluor argues that the cases cited by the Trust do not stand for that proposition.[5]  The Court finds it unnecessary to decide this issue because it concludes that there was lawful cause for Orion's promise to pay Fluor's pre-petition claims.  Until the parties reached an agreement post-petition, Fluor was not legally obligated to complete the coker rebuild.  While there may have been Work Assignments still pending, the completion of the coker rebuild required numerous additional specific Work Assignments.  (FOF 28)  Fluor had the right under the MSA to refuse to accept any new Work Assignments.  (FOF 29)

Further, even if the contract to complete the coker rebuild was executory, Fluor could have filed a motion to compel Orion to assume or reject that contract.  If the contract was assumed, Orion would have been obligated to pay all pre-petition claims due to Fluor on that contract.  11 U.S.C. § 365(b)(1).  Further, although many of the Critical Fire Vendors had executory contracts which Orion felt it could enforce, Orion told the Court at the hearing on approval of the Critical Fire Vendor Motion

---

[5]  Fluor argues that the statement in Dewey Freight that executory contracts are "enforceable by the debtor" against the non-debtor was mere dicta.  31 F.3d at 624.  The Supreme Court in Bildisco held only that a non-debtor could not enforce an executory contract against a debtor.  465 U.S. at 532.  Similarly, the Third Circuit in University Medical Center held that an executory contract may not be enforced against a debtor until it is assumed or rejected.  973 F.2d at 1075.  Therefore, Fluor asserts that there is no support for the Trust's contention that Fluor had to perform the February 4 Work Assignment.

that the possible disruption caused by seeking enforcement of those contracts could have detrimental effects on the estate by delaying the coker rebuild.  (FOF 75)  Accordingly, Orion obtained authority to pay up to $21.6 million in pre-petition debt owed to Critical Fire Vendors, whether they had an executory contract, executed a Trade Agreement, or had pre-petition debt unrelated to the coker rebuild.  (FOF 74-77)

Thus, the Court concludes that there was a lawful purpose for the agreement between Orion and Fluor that Orion would pay Fluor its pre-petition claims if Fluor finished the coker rebuild.

### 4.  Object

"Parties are free to contract for any object that is lawful, possible, and determined or determinable."  La. Civ. Code Ann. art. 1971 (1987).  There is no dispute that the object of the agreement in this case was the completion of the coker rebuild.

Consequently, the Court concludes that all elements necessary for the formation of a contract were established. Orion agreed to pay Fluor its pre-petition claims in full if Fluor completed the coker rebuild.  Orion has breached that agreement.

### C.  Promissory Estoppel

Fluor also argues that the facts support its claim under a theory of promissory estoppel.  See generally Restatement

19

(Second) of Contracts § 90(1) (1981) ("A promise which the
promisor should reasonably expect to induce action or forbearance
on the part of the promissee or a third person and which does
induce such action or forbearance is binding if injustice can be
avoided only by enforcement of the promise.").  Fluor contends
that in a commercial setting where damages are not speculative,
"promissory estoppel is routinely used as a basis for awarding
full expectation damages," particularly where the promissee has
conferred a bargained-for benefit on the promisor, in order to
avoid unjust enrichment.  See Mary A. Becker, Promissory Estoppel
Damages, 16 Hofstra L. Rev. 131, 141 & 155 (1987) (expectation
damages are appropriate where promissory estoppel is invoked in a
case of lack of consideration or negligent or reckless
misrepresentation).

The Trust argues that Louisiana law does not recognize a
claim for promissory estoppel.  See, e.g., Morris v. Friedman,
663 So. 2d 19, 26 (La. 1995).  The Trust does acknowledge,
however, that Louisiana has an analogous cause of action called
detrimental reliance.  See La. Civ. Code Ann. art. 1967 (1987)
("A party may be obligated by a promise when he knew or should
have known that the promise would induce the other party to rely
on it to his detriment and the other party was reasonable in so
relying.  Recovery may be limited to the expenses incurred or the
damages suffered as a result of the promisee's reliance on the

promise.  Reliance on a gratuitous promise made without required
formalities is not reasonable.").  Nonetheless, the Trust
contends that detrimental reliance is a disfavored doctrine under
Louisiana law and should not be applied in this case.  See, e.g.,
Maddox v. Keen, 756 So. 2d 1279, 1283 (La. Ct. App. 2000)
(detrimental reliance is "sparingly applied as it bars the normal
assertion of rights otherwise present.").

In order to prove a claim for detrimental reliance under
Louisiana law, Fluor must establish by a preponderance of the
evidence that: (1) a representation was made, (2) Fluor
reasonably and justifiably relied on that representation, and (3)
Fluor changed its position to its detriment as a result of that
reliance.  See, e.g., Water Craft Management L.L.C. v. Mercury
Marine, 361 F.Supp. 2d 518, 556 (M.D. La. 2004); Carter v. Huber
& Heard, Inc., 657 So. 2d 409, 411 (La. Ct. App. 1995); Daigle
Brothers Sand & Dirt, Inc. v. Sec'y of the Dept. of Revenue &
Taxation, 594 So. 2d 935, 937 (La. Ct. App. 1992).

The Court concludes that Fluor has established a case for
detrimental reliance.  As found above, Orion did make a promise
to Fluor which it reiterated several times: if Fluor completed
the coker rebuild, Orion would pay Fluor's pre-petition claims in
full.  (FOF 53-54, 63-64, 93, 95, 97-98, 103-07, 111)  Fluor
relied on that promise by completing the coker rebuild ahead of
schedule in a workman-like manner.  (FOF 112-13)  Fluor's

reliance was justified given the fact that Orion had filed a
Critical Fire Vendor Motion which was approved by the Court with
a sufficient cap to cover Fluor's pre-petition claims and Orion
had acknowledged that Fluor was a Critical Fire Vendor.  (FOF 53-
54, 63-64, 78-79, 93, 95, 97-98, 103-07, 111)  Finally, Fluor
changed its position by completing the coker rebuild rather than
exercising its other options such as walking off the job or
filing a motion to compel Orion to assume or reject the MSA.
(FOF 88-89, 112-13)

    Therefore, the Court concludes that even in the absence of
an agreement, there is ample evidence in the record to apply the
doctrine of detrimental reliance under Louisiana law to grant
damages suffered by Fluor as a result of its reliance on Orion's
commitments.

    D.    <u>Misrepresentations by Orion</u>

    Fluor argues alternatively that, even if there was no
agreement, Orion misrepresented its intentions to Fluor, who
relied on them to its detriment resulting in recoverable damages.
Fluor contends that, if Orion was not making an offer by its
statements, then its representations were misleading.  It notes
that Victor himself admitted that Bluth's statements that Orion
intended to pay Fluor's pre-petition claims in full "could be
misleading."  (FOF 149)

The elements of fraudulent misrepresentation under Louisiana law are: (1) the intent to defraud or gain an unfair advantage, (2) reliance by the other party, and (3) resulting damage.  La. Civ. Code Ann. art. 1953 (1987) ("Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction.").  See, e.g., Hall v. Arkansas-Louisiana Gas Co., 368 So. 2d 984 (La. 1979);  Dutton & Vaughan, Inc. v. Spurney, 600 So. 2d 693, 698 (La. Ct. App. 1992); Home Indem. Co., Inc. v. Boe, 499 So. 2d 1301 (La. Ct. App. 1986); Automatic Coin Enterprises, Inc. v. Vend-Tronics, Inc., 433 So. 2d 766 (La. Ct. App. 1983).  As the plaintiff, Fluor bears the burden of proving each element of its claim.  See, e.g., Chiarella v. Sprint Spectrum LP, 921 So. 2d 106, 123 (La. Ct. App. 2005).

1.   Intent to Defraud

The Trust argues that the statements on which Fluor relies were merely statements of intent concerning future events.  As such, it contends that they cannot form the basis of a misrepresentation claim, because under Louisiana law statements of intention or promises to perform an act in the future cannot support a claim for fraud unless the party making the statement actually did not intend to complete the act at the time the statement was made.  See, e.g., America's Favorite Chicken Co. v.

23

Cajun Enterprises, Inc., 130 F.3d 180, 186 (5th Cir. 1997)
("Under Louisiana law, a cause of action exists for fraudulent
misrepresentation of past or present facts; 'unfulfilled promises
or statements as to future events,' however, cannot be the basis
for a fraud action.") (emphasis in original) (internal citations
omitted); Sun Drilling Products Corp. v. Rayburn, 798 So. 2d
1141, 1152 (La. Ct. App. 2001) ("Fraud, however, cannot be
predicated on unfulfilled promises or statements as to future
events."); Bass v. Coupel, 671 So. 2d 344, 351 (La. Ct. App.
1996) ("Statements promissory in their nature and relating to
future actions do not constitute actionable fraud."); Dutton v.
Vaughan, Inc., 600 So. 2d 693, 698 (La. Ct. App. 1992) ("Fraud .
. . cannot be predicated on unfulfilled promises or statements as
to future events."); Chrysler Credit Corp. v. Seemann, 470 So. 2d
329, 331 (La. Ct. App. 1985) (failure to perform future act does
not support claim for fraud).

       The Trust contends that there is no evidence that Bluth and
the other Orion representatives lacked the intent to pay Fluor at
the time they informed Fluor that Orion intended to name it a
Critical Fire Vendor.  Accordingly, it argues that Fluor has not
established a necessary element to support its claim of
misrepresentation.

       The Court disagrees.  If the statements made by Orion's
representatives were not an offer to pay Fluor if it completed

24

the coker rebuild, then the Court concludes that they were misrepresentations.  While the Court does not believe that Bluth intended to defraud Fluor, the Court believes that Victor did. Victor testified that representations by Orion that it would pay Fluor's pre-petition claims in full could be misleading because of the fact that Fluor was listed on the internal Critical Fire Vendor list at a fraction of its pre-petition claims.  (FOF 34) Victor himself was present when some of these representations were made to Fluor, on May 16 and 20, 2003.  (FOF 97-99, 102-10) In neither instance did Victor correct the misleading statements. (FOF 109, 148)  Although Victor told Fluor that the amount of its pre-petition claims was different from what Orion had listed, he urged Fluor to submit invoices for the pre-petition work.  (FOF 105-07)  Victor never told Fluor that once those invoices were submitted they would <u>not</u> be paid.  (FOF 109)  In fact, the implication was that they <u>would</u> be paid.

The Court concludes that Victor (and, therefore, Orion) had the intent to defraud Fluor by leading it to believe that it would be paid in full if it completed the coker rebuild, even though Victor knew that Fluor would not be paid.

### 2.  Justifiable Reliance

The Trust also contends that Fluor cannot show that it justifiably relied upon any representations by Orion.  The Trust asserts that, at all times, Orion emphasized to Fluor that

25

payment was conditioned on numerous factors, which were beyond
its control, namely, Court approval, availability of funds, and
reconciliation.  According to the Trust, any reliance by Fluor on
statements that Orion intended to pay it were not justified
because the satisfaction of these events was uncertain.

The Court disagrees.  While the statements by Orion were
conditional, all the conditions were met: the Court did approve
the Critical Fire Vendor Motion, Fluor was identified as a
Critical Fire Vendor (in fact, the Critical Fire Vendor), and the
parties did agree on the terms of their post-petition
relationship.  (FOF 21, 78-79, 85)  Although that relationship
was not reduced to a written Trade Agreement, the Critical Fire
Vendor Order specifically provided that such an agreement was not
necessary.  (FOF 74)  Finally, the amount due to Fluor was
ultimately reconciled by the parties.  (FOF 134)

The Court finds that the delay in reconciliation was largely
Orion's fault, either from a purposeful effort to avoid paying
Fluor until after the coker rebuild was completed (at which time
it would refuse to pay) or simply because Orion had other
pressing matters.  In either event, because Orion said it would
pay Fluor's pre-petition claims in full, it was not necessary
that the amount be reconciled for Fluor to justifiably rely on
that representation.

   3.  Damages

    The Trust finally argues that Fluor has not established that
it was injured (acted to its detriment) as a result of its
purported reliance.  The Trust asserts that Fluor suffered no
harm from its completion of the project in reliance on Orion's
promises to pay for the pre-petition claims because Fluor was
paid in full for its post-petition work and, therefore, has been
fully compensated for any post-petition benefit it conferred on
the estate.  See, e.g., In re Patch Graphics, 58 B.R. 743, 745
(Bankr. W.D. Wis. 1986) (administrative claim allowed only to
extent that benefit was conferred on the estate).  See also In re
Nat'l Steel Corp., 316 B.R. 287, 300 (Bankr. N.D. Ill. 2004); In
re Bridgeport Plumbing Prods., Inc., 178 B.R. 563, 567-68 (Bankr.
M.D. Ga. 1994); In re Express One Int'l, Inc., 217 B.R. 207, 211
(Bankr. E.D. Tex. 1998).

    The Court disagrees with the Trust.  Orion's representations
did cause Fluor to act to its detriment: it finished the coker
rebuild ahead of schedule without first acting to protect its
pre-petition claims.  (FOF 112-13)  If Fluor had not relied on
Orion's promises to pay for the pre-petition claims, Fluor would
have had several options, including filing a motion to force
Orion to assume its executory contract.  If that had been filed,
and Orion had assumed the contract, then Orion would have had to
pay Fluor's pre-petition claims in full. 11. U.S.C. § 365(b)(1).

27

It is likely that Orion would have assumed the contract given Fluor's important role in the coker rebuild.  Orion stated at the hearing on the Critical Fire Vendor Motion that it wanted authority to pay Critical Fire Vendors even if Orion could enforce an executory contract against them, because of the harm the estate would suffer if the coker rebuild were delayed by litigation over enforceability of such contracts.  (FOF 72-77)

Consequently, the Court concludes: (1) if there was no agreement between the parties for the payment of Fluor's pre-petition claims, then Orion mislead Fluor into believing that it would pay those claims; (2) Fluor reasonably relied on Orion's misrepresentations and Fluor acted to its detriment by completing the coker rebuild; and (3) Fluor has established it is entitled to damages for the harm caused by its reliance on those misrepresentations.

E.    <u>Amount of Damages</u>

1.    <u>Compensatory Damages</u>

Because Fluor fully performed all its obligations under the post-petition agreement with Orion, Fluor is entitled to recover its "expectancy" as the measure of damages for Orion's failure to pay.  La. Civ. Code Ann. art. 1995 (1987) ("Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived.").  <u>See generally</u> Restatement (Second) of Contracts § 347 (1981) ("[T]he injured party has a right to

28

damages based on his expectation interest as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform."); 11-55 Arthur Linton Corbin et al., Corbin on Contracts §55.3 (2006) ("In determining the amount of compensation as the 'damages' to be awarded [for a breach of contract], the aim in view is to put the injured party in as good a position as that party would have been if performance had been rendered as promised.").

The Trust asserts, however, that the Critical Fire Vendor Motion only sought $21.6 million for payment of Critical Fire Vendors and that Fluor was only listed for $3.7 million (the amount of invoices that Fluor had sent to Orion as of the time the Motion was prepared).  (FOF 73, 80, 85)  Approximately $9.9 million has already been paid to other Critical Fire Vendors.  (FOF 137)  Therefore, the Trust argues that the most Fluor can be awarded is approximately $11.7 million.

Flour argues that the Trust failed to establish that the payments made by Orion to the other vendors were authorized by the Critical Fire Vendor Order.  Specifically, Fluor argues that there is no evidence that they were, in fact, Critical Fire Vendors.

29

The Court disagrees with Fluor on this factual point.
Victor testified that the vendors Orion paid were Critical Fire
Vendors and that he had negotiated Trade Agreements with them.
(FOF 137)  Fluor presented no evidence to the contrary.  The
Court accepts that testimony as evidence that the payments were
appropriate and were authorized under the Critical Fire Vendor
Order.

The Court disagrees, however, with the Trust's assertion
that Fluor cannot receive the full amount of its damages because
of the cap in the Critical Fire Vendor Order.  The Court has the
power to modify the Critical Fire Vendor Order as necessary to
achieve its goals.  See, e.g., In re Fonner, 262 B.R. 350, 356
(Bankr. W.D. Pa. 2001) (concluding that bankruptcy court has
authority under Fed. R. Civ. P. 60(b) to modify prior order it
entered where appropriate to accomplish justice).  The Critical
Fire Vendor Motion sought authority to pay the Critical Fire
Vendors their pre-petition claims in full in order to get the
coker rebuild completed to facilitate the sale to Valero.  The
Trust does not dispute that Fluor was a Critical Fire Vendor and,
in fact, the largest and most important of those vendors.  (FOF
85, 145)  The Trust also does not now dispute the amount of
Fluor's pre-petition claims.  (FOF 134)  The Court, therefore,
finds sufficient cause to modify the Critical Fire Vendor Order
to permit payment in full of Fluor's pre-petition claims.

30

The Trust argues further, however, that only the fire-related portion of Fluor's pre-petition claims should be paid under the Critical Fire Vendor Order.  This is contradicted, however, by the Critical Fire Vendor Motion itself and by the assertions made by Orion's counsel at the hearing on approval of that Motion.  (FOF 70, 77)  Orion requested, and the Court authorized, the payment of all pre-petition claims of Critical Fire Vendors (even those unrelated to the coker rebuild) in order to avoid any interruption in the completion of the coker rebuild. (FOF 78-79)  Therefore, the Court concludes that Fluor is entitled to payment of all of its pre-petition claims.

      2.  <u>Interest</u>

"When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500.  The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more."  La. Civ. Code Ann. art. 2000 (1987).  <u>See, e.g.</u>, <u>A.P.S., Inc. v. Standard Motor Products, Inc.</u>, 295 B.R. 442 (D. Del. 2003) (awarding pre-judgment interest for breach of post-petition contract); <u>Newman Marchive P'ship v. City of Shreveport</u>, 923 So. 2d 852, 861 (La. Ct. App. 2006) (awarding interest and citing La. Civ. Code Ann.

art. 2000 (1987)).  <u>See generally</u> Restatement (Second) of
Contracts § 354(1) (1981) ("If the breach consists of a failure
to pay a definite sum in money or to render performance with
fixed or ascertainable monetary value, interest is recoverable
from the time for performance on the amount due less all
deductions to which the party in breach is entitled."); 11-57
Arthur Linton Corbin et al., Corbin on Contracts §57.18 (2006)
("In all jurisdictions simple interest at the statutory legal
rate is recoverable as damages for non-payment of a liquidated
debt from the date of breach if the parties involved have not
themselves provided otherwise by contract.").

As noted above, the Court finds that Orion's refusal to pay
Fluor's pre-petition claims, as it promised, constitutes a breach
of a post-petition agreement to pay a definite sum of money
(namely, the amount of Fluor's pre-petition claims).  As a
result, the Court concludes that Fluor is entitled to recover
from the Trust the principal sum of $20,657,860.58 together with
pre-judgment interest, calculated from the date of reconciliation
of the sum due through the date of entry of the judgment.

The MSA did not provide for interest on unpaid invoices.
(JTX 83)  Therefore, pre-judgment interest on Fluor's pre-
petition claims shall be calculated at the legal rate set forth
in the Louisiana statute.  The Trust notes, however, that this
calculation is complicated by the fact that the Louisiana legal

32

rate is adjusted periodically.  Therefore, the Court will direct
that Fluor calculate the sum due and allow the Trust to comment
on the accuracy of that calculation.

     3.  <u>Attorneys' Fees</u>

    Fluor argues that it is well established that "the federal
exception" to the "American Rule" allows a court, in the exercise
of its equity powers, to award attorneys' fees to a party where
the opponent has acted in bad faith.  <u>See, e.g.</u>, <u>Alyeska Pipeline
Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 258-59 (1975); <u>In re
Fox</u>, 725 F.2d 661 (11th Cir. 1984); <u>In re Nangle</u>, 281 B.R. 654
(B.A.P. 8th Cir. 2002); <u>In re Neal</u>, No. 05-01676, 2006 Bankr.
LEXIS 736, at *1 (Bankr. D.D.C. Feb. 24, 2006); <u>In re Reilly</u>, 244
B.R. 46 (Bankr. D. Conn. 2000).  A court is justified in awarding
attorneys' fees for bad faith where recalcitrance forces a
claimant to hire a lawyer and go to court to get what is plainly
owed.  <u>See, e.g.</u>, <u>Vaughn v. Atkinson</u>, 369 U.S. 527 (1962); <u>Lewis
v. Texaco</u>, 527 F.2d 921 (2d Cir. 1975); <u>Lewis v. Texaco</u>, 418
F.Supp. 27 (S.D.N.Y. 1976) (on remand).  <u>See generally</u>
"Attorney's Fees and the Federal Bad Faith Exception," 29
Hastings L. J. 319, 323-326 (1978).

    In this case, the Court concludes that an award of
attorneys' fees is warranted because of Orion's refusal to pay
Fluor any amount of its pre-petition claims even though Fluor
fully completed the coker rebuild and even though Orion admits it

33

had authority under the Critical Fire Vendor Order to pay at least $11.7 million of those claims.  Orion's actions evidence its bad faith: requiring Fluor to submit and reconcile all its invoices before any payment would be made, dragging out the reconciliation process, ultimately refusing to pay any of Fluor's pre-petition claims, and opposing Fluor's Complaint and Motion for Relief.

The Court suspects that one reason Orion and the Trust refused to pay Fluor was because they contend that Fluor was responsible for the fire.  Until Orion is successful in its action against Fluor on that claim, however, it has no defense to payment of Fluor's claims as promised.  (FOF 127)  See, e.g., In re Worldwide Direct, Inc., No. 99-108, 2000 WL 33712474 (Bankr. D. Del. Nov. 22, 2000) (overruling objection to claim based on debtor's alleged preference action against creditor because preference had not been adjudicated) (citing Woolley's Parkway Ctr., Inc., 147 B.R. 996 (Bankr. M.D. Fla. 1992)).

The sheer recalcitrance that characterizes Orion's refusal to pay amounts plainly owed constitutes bad faith justifying the exercise of this Court's equitable powers to award attorneys' fees.  The Court will, therefore, consider an award of attorneys' fees in favor of Fluor.  The Court will direct Fluor to submit its fee request and permit the Trust to object to any fees requested.

34

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the relief requested by Fluor and direct the payment of its pre-petition claims in full, together with interest and attorneys' fees as may be awarded by the Court.

An appropriate Order is attached.


Dated: July 20, 2007          BY THE COURT:


Mary F. Walrath
United States Bankruptcy Judge